[Civ. No. 12609. First Dist., Div. One. May 27, 1944.]

UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Appellant, v. WALDO F. POSTEL, Individually and as Administrator, etc., et al., Respondents.

J. A. Chase for Appellant.

Waldo F. Postel, in pro. per., for Respondents.

WARD, J.—On May 22, 1925 the plaintiff, a surety company, at the request of Lizzie B. Keck issued to her three surety bonds, each in the amount of $2,600, and being respectively in favor of the three minor children of herself and her husband Arthur W. Keck. The bonds were given to assure the faithful discharge by Mrs. Keck of her duties as the duly appointed guardian of the minors.

Mrs. Keck subsequently, and while the bonds were in full force, defaulted in accounting for the funds of the minors which had come into her possession as guardian, and by reason thereof each of said minors brought suit and secured judgment against the surety company in the sum of $2,771.03. The surety company paid the judgments and thereafter filed an action against Mrs. Keck upon her original application

for the bonds and the indemnity agreement contained therein, and obtained judgment against her for the aggregate of the amounts paid by it upon the bonds.

In 1931 an interlocutory decree of divorce was granted Mrs. Keck, which provided for payment of alimony by her husband in the sum of $100 a month. No payments were made on account of said alimony nor was a final decree of divorce ever entered. Mr. Keck died intestate in November of 1941 and the defendant herein, Waldo F. Postel, who had acted as attorney for Mrs. Keck in various matters over a number of years, was, at her request, appointed administrator of Keck's estate, which was appraised at $20,455.18. Based upon the sum due and payable in her judgment for alimony, Mrs. Keck filed a creditor's claim against her husband's estate in an amount of $17,966.55, which claim was duly allowed.

On January 26, 1942, Mrs. Keck made, executed and delivered to her attorney, Postel, an assignment of all her right, title and interest in and to the estate of her husband, and to all the assets of said estate. The consideration for the execution of the assignment was professional services, and costs in connection therewith, rendered by Postel over a number of years commencing in 1928; also amounts loaned her by him from time to time. Mrs. Keck testified that she was altogether satisfied that Postel, her attorney in all of the litigation, should receive what there was; that she did not think the claim of the surety company just and did not feel she owed it anything. On July 10, 1942, by virtue of its judgment against Mrs. Keck the surety company levied on all the assets of the estate of her deceased husband.

On the trial the reasonable value of the legal services rendered was testified to be in excess of $20,000. There is no evidence that they were of a lesser value. To that extent it must be assumed that there was an adequate consideration for the assignment. It is contended by appellant that the assignment was motivated by an intent to defraud it and other creditors. There is no evidence of an intent to defraud other creditors, or that any were in fact defrauded. The only evidence introduced was documentary, plus the testimony of Mrs. Keck and Postel. Postel testified that Mrs. Keck suggested the assignment and that at her request he prepared the necessary instruments. Mrs. Keck testified that she "phoned" Postel and told him to prepare the papers and

bring them to her; that she understood she was conveying all of her interest in the estate to Postel, who had represented her in previous litigation covering a number of years and had given her financial aid. She testified further: "He did more for me than anybody in this world or anybody's family would do for them, as far as carrying me as he did; took care of everything; he is surely entitled to it, and I hope he does get plenty out of it, whatever it might be."

There is nothing in the documentary evidence or in any inference that may be drawn therefrom indicating that the transaction was fraudulent, a fact which must be proved by clear and convincing evidence. The court on this issue found against appellant. The record in this respect does not disclose evidence justifying a contrary finding. (*Raine* v. *Spreckels*, 54 Cal.App.2d 169 [128 P.2d 709].)

The assignment by Mrs. Keck appears to have rendered her insolvent. Appellant contends that the consideration was not in fact a fair one. If this is so the assignment as a matter of law is void. The services by Postel were rendered not only prior to the assignment but prior to the death of Mr. Keck. As previously stated the evidence of their value was not successfully attacked. ▆ It is urged that part of the claim for services is barred by the statute of limitations. The fact that a debt or part thereof is so barred does not invalidate an assignment of a claim based thereon unless fraud be proven as a fact. In *Ferguson* v. *Larson*, 139 Cal.App. 133, 135, 136 [33 P.2d 1061], this court said: "The fact that the debt may be barred by the statute of limitations can affect the remedy only, but in no degree can it release the debtor of the moral duty of paying it. Although the note was barred by said statute it constituted a good and valuable consideration. (*Hoover* v. *Wasson*, 11 Cal.App. 589 [105 P. 945]; *Manchester* v. *Tibbetts*, 121 N.Y. 219 [24 N.E. 304, 18 Am.St.Rep. 816]; 12 R.C.L. 576.) ▆ It is well settled in this state that the extinguishment of security or a preexisting debt constitutes a valuable consideration for the sale or assignment of property. (*Hart* v. *Church*, 126 Cal. 471, 480 [58 P. 910, 59 P. 296, 77 Am.St.Rep. 195].) ▆ It is also a well-settled law of this state that in the absence of fraud a debtor may prefer one creditor in preference to another. Section 3431 of the Civil Code provides: 'In the absence of fraud, every contract of a debtor is valid against

all his creditors, existing or subsequent, who have not acquired a lien on the property affected by such contract.' Section 3432 of the same code provided: 'A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another.' The statutory right of a debtor to prefer one creditor to another is based upon the principle that in the absence of fraud the owner of property may do with it as he pleases (*Heath* v. *Wilson,* 139 Cal. 362 [73 P. 182]), nor does the fact that such preference hinders or delays other creditors in the collection of their claims render it void, nor the fact that the preferred creditor had knowledge that such consequence would follow the preference. (12 Cal.Jur. 1010, 1011; *In the Matter of Muller & Kennedy,* 118 Cal. 432 [50 P. 660]; *Priest* v. *Brown,* 100 Cal. 626 [35 P. 323].)'' (See *Easton* v. *Ash,* 18 Cal.2d 530 [116 P.2d 433]; *McGee* v. *Allen,* 7 Cal.2d 468 [60 P.2d 1026]; *Hibernia Sav. & Loan Soc.* v. *Belcher,* 4 Cal.2d 268 [48 P.2d 681]; *Chichester* v. *Mason,* 43 Cal.App.2d 577 [111 P.2d 362].) In view of the holdings in the cases cited, the consideration was valid.

■ Appellant argues that this rule has been changed by the passage of the Uniform Fraudulent Conveyance Act of 1939, wherein a definition of ''fair consideration'' is given. (See Civ. Code, div. 4, pt. 2, tit. 2, § 3439 et seq.; Stats. 1939, ch. 329, p. 1667.) Nothing in the wording of the act indicates that it was intended to exclude a promise to pay a debt barred in part by the statute of limitations if there was in fact a fair consideration given in good faith by the respective parties. (§ 3439.03.)

Appellant contends that since Postel, the administrator of the estate, took an assignment from Mrs. Keck of her approved claim against the estate, the record raises the issue whether or not such acceptance of the assignment violated Probate Code, section 583, which provides: ''No executor or administrator may purchase any property of the estate, or any claim against the estate, directly or indirectly, nor be interested in any such purchase.''

■ The purpose of the section is to forbid an administrator or executor from directly or indirectly purchasing the property of an estate or a claim against it for his own advantage and to the detriment of the estate. If an administrator is interested even indirectly in a claim which works to the detriment of an estate, he is false to the trust imposed in his

acceptance of the obligation to administer the estate and perform the duties required by law, including the protection of the rights of heirs, devisees, legatees, creditors and all who have a legal interest in the estate.

 An administrator may not deal with himself. (11 Cal.Jur. 864, §516.) This rule does not prevent heirs from making a contract with him as one of the heirs for the division of the estate. Section 583 based upon section 1576 of the Code of Civil Procedure "is only declaratory of the principle of law existing before its enactment, that a trustee must not deal with himself. (*Burris* v. *Adams et al.*, 96 Cal. 664 [31 P. 565].)" (*Baker* v. *Miller*, 190 Cal. 263, 269 [212 P. 11].) In the last cited case it was definitely held that an administrator could make a contract with other heirs for the division of an estate.

 An administrator has no right directly or indirectly to be interested in the purchase of a claim before its approval by the court, but he may accept a claim in payment of a personal indebtedness if the claim has acquired a legal status prior to its assignment as appears from the record in this case. (11 Cal.Jur., p. 1038, § 665; 117 A.L.R. 1371; 11 Cal. Jur. 864; *Burnett* v. *Lyford,* 93 Cal. 114 [28 P. 855]; *Estate of McDougald,* 146 Cal. 191 [79 P. 878].)

Cases cited by appellant are not controlling as applied to the facts of this case. In *Jones* v. *Hanna,* 81 Cal. 507 [22 P. 883], the executrix sought "to make a profit to herself" on a purchase of property for the estate. In *Estate of Watkins,* 121 Cal. 327 [53 P. 702], the administrator appeared in the dual capacity of trustee of the estate funds and as the representative of a creditor who had given him a power of attorney to collect a claim against the estate. At page 328 the court said: ". . . the authority to sign a receipt conferred by the power of attorney was but an incident of the authority to collect the money; it necessarily follows that when he became administrator of the estate the operation of the power from Mrs. Lawrence was suspended, if indeed his agency for her was not entirely renounced." In *Estate of Boggs,* 19 Cal.2d 324 [121 P.2d 678], an executrix appropriated rental which she claimed as her personal property. The Supreme Court disapproved an arbitrary apportionment and said (p. 334): ". . . a further hearing of this matter should be had in the probate court for the purpose of determining

the reasonable rental value of her furniture for the period mentioned.''

In the present case the administrator was not dealing with himself as administrator, but with a claimant against the estate. He did not represent Mrs. Keck as attorney in connection with the claim. He did not appear in a dual capacity. If injury resulted to an heir, etc., or to anyone interested in the estate, such fact does not appear in the record. In addition the trial court found that there was a fair consideration for the assignment.

The judgment upon which execution issued was a judgment against Lizzie B. Keck. It was her interest in the husband's estate that was sought in satisfaction of appellant's judgment. If Mrs. Keck, though insolvent, preferred to pay the indebtedness to Postel rather than appellant's judgment, appellant's remedy lay in bankruptcy proceedings. (Civ. Code, § 3432; *Appling* v. *Brueckner,* 97 Cal.App. 750 [276 P. 382].)

Assuming section 583 applies to claims already approved by the administrator and the court, and therefore in the status of a ''quasi'' judgment when assigned to the administrator, the answer to the contentions of appellant, based upon section 583, is that appellant is in no position to rely on that section, which was intended to protect those interested in an estate from being legally injured by the acts of an administrator. Transactions in violation of section 583 are not void—only voidable. (*Boyd* v. *Blankman,* 29 Cal. 19 [87 Am.Dec. 146]; *O'Connor* v. *Flynn,* 57 Cal. 293; *Burris* v. *Kennedy,* 108 Cal. 331 [41 P. 458].) They are '' 'voidable only at the instance of those interested in the estate.' '' (*Santos* v. *Santos,* 32 Cal.App.2d 62, 65 [89 P.2d 164].) In *Boyd* v. *Blankman, supra,* the court said (p. 36): ''An examination of the Probate Act will disclose the intent of section one hundred and ninety-three [subsequently enacted as Code of Civil Procedure, § 1576, which was used as the basis for the first clause of Probate Code, § 583]; and it is apparent that the object was not to declare who might or who might not become a purchaser of the property of the estate; but it was to prevent the property from being sold at a price less than its true value, which might be the case if the administrator, either directly or indirectly, prevented competition among the bidders, by entering into the market, either personally or by his agents, or if, with a view of pur-

chasing, he was tempted to undervalue the property in his proceedings respecting the sale. The protection to the estate designed by that section, can be as fully secured by permitting the *parties interested in the estate* to set the sale aside and have the administrator declared a trustee, as it would be to construe the section so as to allow strangers to impeach the sale, with the consequent risk to the *bona fide* purchaser, without notice, from the administrator's agent, of losing the premises he purchased, relying on the apparent regularity of the probate proceedings and the confirmation of the sale.'' (Italics added.) In the present case, for the purposes of this appeal it may be assumed that the acquisition by Postel of Mrs. Keck's claim against the estate of Mr. Keck violated section 583. The appellant is not legally interested—has no legal claim—in the estate of Mr. Keck. Appellant is a judgment creditor of Mrs. Keck, a claimant against the estate of Mr. Keck. The appellant not having an interest in the estate of Mr. Keck cannot raise section 583.

In view of the conclusions reached herein it is not necessary to consider further points raised by respondents.

It having come to the attention of the court that respondent, Lizzie B. Keck, died April 2, 1944, which date was subsequent to the submission of this appeal, it is ordered that this judgment be filed *nunc pro tunc* as of the date of the submission of said appeal, to wit: March 27, 1944. (*Estate of Randall*, 194 Cal. 725 [230 P. 445]; *Remondino* v. *Remondino*, 41 Cal.App.2d 208-218 [106 P.2d 437]; *Holman* v. *Stockton Savings & Loan Bank*, 49 Cal.App.2d 500 [122 P.2d 120].) The times for filing any petition for rehearing or hearing in this proceeding shall not be affected by this order, such times to run from the date of the original filing of this opinion, to wit: May 27, 1944.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

REPORTER'S NOTE: On June 1, 1944, the opinion was modified to read as above.